UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

S.M.T., a minor, by HEAVEN DAY PROSSER,

                Plaintiff,        1:14-CV-1202
                                  (GTS/WBC)

v.

COMMISSIONER OF SOCIAL SECURITY

                Defendant.
_____

APPEARANCES:                        OF COUNSEL:

LEGAL AID SOCIETY OF NORTHEASTERN     MARY M. WITHINGTON, ESQ.
NEW YORK
  Counsel for Plaintiff
112 Spring St., Ste. 109
Saratoga Springs, NY 12866

U.S. SOCIAL SECURITY ADMIN.            JASON P. PECK, ESQ.
OFFICE OF REG'L GEN. COUNSEL-REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## REPORT and RECOMMENDATION

      This matter was referred for report and recommendation by the Honorable Judge

Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(d).  (Dkt. No. 14.)  This case has proceeded in accordance with General

Order 18.

      Currently before the Court, in this Social Security action filed by Heaven Day

Prosser on behalf of her minor son, S.M.T. ("Plaintiff") against the Commissioner of

Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. § 405(g), are

the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 10, 11.) For the reasons set forth below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

S.M.T. was born on August 14, 2003.  (T. 138.)  At the time of his hearing, he was a school-age child.  (T. 30.)  S.M.T.'s alleged disability consists of asthma, sleep apnea, anxiety/panic attacks, and allergies.  (T. 150.)

### B.    Procedural History

On May 3, 2011, Plaintiff applied for Supplemental Security Income on S.M.T.'s behalf.  (T. 86.)  Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ").  On August 2, 2012, Plaintiff and S.M.T. appeared before ALJ Dale Black-Pennington.  (T. 27-40.) The hearing was adjourned so that Plaintiff could retain counsel.  (T. 78-85.)  On October 30, 2012, Plaintiff appeared again before the ALJ Black-Pennington.  (T. 45-77.)  On November 19, 2012, ALJ Black-Pennington issued a written decision finding S.M.T. not disabled under the Social Security Act.  (T. 24-44.)  On July 31, 2014, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)  Thereafter, Plaintiff timely sought judicial review in this Court.

### C.    The ALJ's Decision

Generally, in her decision, the ALJ made the following six findings of fact and conclusions of law.  First, the ALJ found that S.M.T. was a "school-age child" at the time

of filing and a "school-age child" at the time of the hearing pursuant to 20 C.F.R. § 416.926a(g)(2). (T. 30.) Second, the ALJ found that S.M.T. had not engaged in substantial gainful activity since the application date. (*Id.*) Third, the ALJ found that S.M.T. suffered from the severe impairments of attention deficit hyperactivity disorder ("ADHD"), asthma/allergies, and an anxiety/panic disorder. (*Id.*) Fourth, the ALJ found S.M.T. did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. I ("the Listings"). (T. 31.) Fifth, the ALJ found S.M.T. did not have an impairment or combination of impairments that functionally equaled an impairment set forth in the Listings. (T. 31-39.) Sixth, and finally, the ALJ concluded S.M.T. had not been disabled, as defined by the Social Security Act, since May 3, 2011, the date the application was filed. (T. 39-40.)

## II. THE PARTIES' BRIEFINGS

### A. Plaintiff's Arguments

Generally, in support of her motion for judgment on the pleadings, Plaintiff makes three arguments. First, Plaintiff argues the ALJ committed reversible error in failing to find that S.M.T.'s asthma met or equaled the Listing found at 20 C.F.R. Part 404, Subpart P, App. 1, § 103.03. (Dkt. No. 10 at 16-18 [Pl.'s Mem. of Law].) Second, Plaintiff argues the ALJ committed reversible error in failing to find that S.M.T. had a marked limitation in the domain of interacting and relating with others and a marked limitation in the domain of health and physical well-being. (*Id.* at 18-21.) Third, Plaintiff argues the decision of the ALJ was against the substantial weight of the evidence and was incorrect as a matter of law. (*Id.* at 21-24.)

**B.     Defendant's Argument**

Generally, in support of her cross-motion for judgment on the pleadings, Defendant makes three arguments.  First, Defendant argues substantial evidence supported the ALJ's finding that S.M.T.'s asthma did not meet or equal Listing § 103.03 (Dkt. No. 11 at 4-6 [Def.'s Mem. of Law].)  Second, Defendant argues substantial evidence supports the ALJ's finding that S.M.T. had no limitation in the domain of interacting and relating with others and less than marked limitation in the domain of health and physical well-being.  (*Id.* at 6-9.)  Third, Defendant argues substantial evidence supports the ALJ's decision and the decision was correct as a matter of law. (*Id.* at 9-10.)

## III.     RELEVANT LEGAL STANDARD

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *see Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

An individual under the age of eighteen (18) is disabled, and thus eligible for SSI benefits, if he or she has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. *See* 42 U.S.C. § 1382c(a)(3)(C)(i). However, that definitional

provision excludes from coverage any "individual under the age of [eighteen] who engages in substantial gainful activity...." 42 U.S.C. § 1382c(a)(3)(C)(ii).

By regulation, the agency has prescribed a three-step evaluative process to be employed in determining whether a child can meet the statutory definition of disability. *See* 20 C.F.R. § 416.924; *Kittles v. Barnhart*, 245 F. Supp. 2d 479, 487-88 (E.D.N.Y. 2003); *Ramos v. Barnhart*, No. 02-CV-3127, 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003).

The first step of the test, which bears some similarity to the familiar five-step analysis employed in adult disability cases, requires a determination of whether the child has engaged in substantial gainful activity. *See* 20 C.F.R. § 416.924(b); *Kittles*, 245 F. Supp. 2d at 488. If so, then both statutorily and by regulation the child is ineligible for SSI benefits. *See* 42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.924(b).

If the child has not engaged in substantial gainful activity, the second step of the test next requires examination of whether the child suffers from one or more medically determinable impairments that, either singly or in combination, are properly regarded as severe, in that they cause more than a minimal functional limitation. *See* 20 C.F.R. § 416.924(c); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7. In essence, "a child is [disabled under the Social Security Act] if his impairment is as severe as one that would prevent an adult from working." *Zebley v. Sullivan*, 493 U.S. 521, 529, 110 S. Ct. 885, 890 (1990).

If the existence of a severe impairment is discerned, the agency must then determine, at the third step, whether it meets or equals a presumptively disabling condition identified in the listing of impairments set forth under 20 C.F.R. Pt. 404, Subpt.

P., App. 1 (the "Listings"). *Id.* Equivalence to a listing can be either medical or functional. *See* 20 C.F.R. § 416.924(d); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7. If an impairment is found to meet, or qualify as medically or functionally equivalent to, a listed disability and the twelve-month durational requirement is satisfied, the child will be deemed disabled. *See* 20 C.F.R. § 416.924(d)(1); *Ramos*, 2003 WL 21032012, at *8.

Analysis of functionality is informed by consideration of how a child functions in six main areas referred to as "domains." 20 C.F.R. § 416.926a(b)(1); *Ramos*, 2003 WL 21032012, at *8. The domains are described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). Those domains include: (i) [a]cquiring and using information; (ii) [a]ttending and completing tasks; (iii) [i]nteracting and relating with others; (iv) [m]oving about and manipulating objects; (v) [c]aring for [oneself]; and (vi) [h]ealth and physical well-being. *See* 20 C.F.R. § 416.926a(b)(1).

Functional equivalence is established in the event of a finding of an "extreme" limitation, meaning "more than marked," in a single domain. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. An "extreme limitation" is an impairment which "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(I).

Alternatively, a finding of disability is warranted if a "marked" limitation is found in any two of the listed domains. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. A "marked limitation" exists when the impairment "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. §

416.926a(e)(2)(i).  "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C).

## IV.    ANALYSIS

### A.    Listing § 103.03(B)

To meet the impairment set forth in § 103.03(B) of the Listings, S.M.T. must have had asthma "attacks," in spite of prescribed treatment, which required physician intervention, and occurred at least once every two months or at least six times in a year. 20 C.F.R. Part 404 Subpart P, App. I, § 103.03(B).  "Attacks" are defined as "prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting."  *Id.* at § 3.00(C).

When considering whether S.M.T. had suffered the requisite number of attacks under § 103.03(B), "[e]ach inpatient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks."

Plaintiff argues S.M.T. met the criteria of Listing § 103.03(B) because treatment records "clearly demonstrate [S.M.T.] experienced far more than the required attacks

per year necessary to establish disability under 103.03." (Dkt. No. 10 at 16 [Pl.'s Mem. of Law].)[1]

Here, the ALJ determined that S.M.T.'s asthma did not meet or equal a Listing. (T. 31.) Although the ALJ did not cite a specific Listing, she clearly analyzed Listing 103.3 because her discussion focused on S.M.T.'s asthma. (*Id.*) The ALJ reasoned that S.M.T.'s asthma did not meet the criteria of a Listing because his asthma was "well controlled," the record did not contain abnormal objective laboratory findings, and although S.M.T. had an emergency room visit and hospitalization in June 2011, the stay was not frequent enough to meet the Listing criteria. (*Id.*) The ALJ also concluded that there were no records of any other hospitalizations, emergency room visits, or other urgent care intervention for respiratory problems during the relevant time frame. (*Id.*)[2]

On April 3, 2011, S.M.T. received emergency care for trouble breathing, fever, and chest pain. (T. 389.) On examination it was noted that S.M.T.'s oxygen saturation was 100% on room air, he appeared well, and his lungs were without rales or wheezes. (T. 390.) S.M.T. had an EKG and chest x-rays, which were normal. (*Id.*) He received a nebulizer treatment, but was not given steroids since he was already on inhaled steroids. (*Id.*) He was diagnosed with bronchilis and discharged the same day. (*Id.*)

On June 29, 2011, S.M.T. received emergency care. (T. 323.) Notations indicated that S.M.T. was initially seen on June 28, 2011, and diagnosed with pneumonia. (*Id.*) On examination, S.M.T.'s oxygen saturation was between 98 and

---

[1] Plaintiff appears to argue that S.M.T. meets or equals Listing 103.03(B) because she refers to "attacks," which are covered in section (B) of Listing 103.03. In support of her argument Plaintiff cites to one treatment notation in the record in which S.M.T.'s asthma was described as severe. (T. 425.)

[2] Plaintiff argues the ALJ erred in relying on teacher notations in making his Listing determination (Dkt. No. 10 at 16 [Pl.'s Mem. of Law]); however, the ALJ relied primarily on emergency room notations in concluding that S.M.T. did not meet or equal a Listing (T. 31).

100% on room air. (T. 324.) S.M.T. was observed as sitting comfortably, he had some "end-expiratory wheezing," but otherwise was in no acute distress. (*Id.*) S.M.T. was discharged the same day. (*Id.*)

Although Plaintiff was treated in an emergency room on other occasions, none of the treatment received was for asthma. For example, emergency room records from May 29, 2011, indicated Plaintiff was injured while jumping on a trampoline. (T. 326.)

Substantial evidence supported the ALJ's determination that S.M.T.'s asthma did not meet or equal a Listing. The record did not contain evidence that S.M.T. suffered at least six asthma attacks within a twelve month period, "in spite of prescribed treatment and requiring physician intervention." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 103.03(B). The record failed to indicate that S.M.T. had "attacks of asthma" shown by "*prolonged symptomatic episodes* lasting one or more days and *requiring intensive treatment*, such as intravenous bronchodilator or antibiotic admiration or prolonged inhalational bronchodilator therapy *in a hospital, emergency room or equivalent setting*." *Id.* at § 3.00(C) (emphasis added). Plaintiff points to evidence in the record which described S.M.T.'s condition as "severe" and he was unable to participate in Little League baseball; however, this evidence does not pertain to the criteria of Listing § 103.03. (Dkt. No. 10 at 16-17 [Pl.'s Mem. of Law].) Therefore, the ALJ properly determined that S.M.T.'s asthma did not meet or equal the requirements of Listing § 103.03 because the medical evidence failed to support all the criteria outlined in the Listing.

### B. The Domain of Interacting and Relating with Others

The domain of interacting and relating to others considers how well a child is able to initiate and sustain emotional connections with others, develop and use the language

of the community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others. 20 C.F.R. § 416.926a(i). School-age children "should be able to develop more lasting friendships with children who are [the child's] age. [The child] should begin to understand how to work in groups to create projects and solve problems. [The child] should have an increasing ability to understand another's point of view and to tolerate differences. [The child] should be well able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand." *Id.* at § 416.926a(i)(2)(iv).

Here, the ALJ determined that S.M.T. had no limitation in the domain of interacting and relating with others. (T. 36.) In making her determination, the ALJ reasoned that despite his impairments, school records indicated S.M.T. was "doing quite well socially" and S.M.T.'s first grade teacher and school nurse indicated no limitations in his ability to socially interact. (*Id.*) The ALJ also relied on Plaintiff's testimony that S.M.T. had no difficulty getting along with peers and teachers. (T. 37.) Further, the ALJ relied on the opinion of consultative examiner, Bret Hartman Pys.D., who determined that S.M.T. had only mild difficulties maintaining social behavior with peers and adults. (*Id.*)

Plaintiff argues the ALJ erred in her determination that S.M.T. had no limitation in the domain of interacting and relating to others because S.M.T. "cannot and does not play outside with others." (Dkt. No. 10 at 20, 21 [Pl.'s Mem. of Law].) Plaintiff further argues S.M.T. had a marked limitation in this domain because he missed an "inordinate" amount of school time due to his impairments. (*Id.*) First, Plaintiff provides no support for her contention that a child who is precluded from outdoor and physical play equates

to a marked limitation in this domain.  Second, substantial evidence in the record supported the ALJ's determination that S.M.T. had no limitation in this domain.

To be sure, common sense indicates that a child who cannot participate in outdoor play time or gym class, and who misses an extreme amount of school time, whether it's due to asthma or anxiety, may have difficulty making and maintaining friendships at school.  However, the record does not support the contention that S.M.T.'s asthma and anxiety prevented him from making or maintaining friendship or limited his ability to interact appropriately with others.  Plaintiff testified that S.M.T. gets along with children his age and teachers; however, he likes to argue with adults.  (T. 59-60.)  S.M.T. testified that he usually just sits alone during recess, but that he has friends in school and outside of school.  (T. 70-72.)  S.M.T. testified that he participated in regular gym class twice a week, he took breaks when needed and then continued with the activity.  (T. 70.)  Therefore, although S.M.T.'s outdoor time and gym class may be limited, S.M.T. was not completed precluded from going outside or participating in gym with his peers, or making and maintaining friendships.

The domain of interacting and relating with others also encompasses aspects of the ability to learn, the ability to work cooperatively with others, and the ability to recognize, understand and respond appropriate to emotional and behavioral cues.  SSR 09-5p (S.S.A. Feb. 17, 2009), 2009 WL 396026, at *2.  As S.M.T.'s teacher noted, he was a "quiet" child, but interacted appropriately with his peers.  (T. 223.)  Therefore, although S.M.T.'s impairments limited his ability to physically play outdoors with other children and may have contributed to S.M.T.'s "quiet" nature, his impairments were not to a degree of severity that precluded him from interacting and relating with others.  *See*

*Miles ex rel. J.M. v. Astrue*, 775 F. Supp. 2d 715, 728 (S.D.N.Y. 2011), *aff'd on other grounds*, 502 F.App'x. 59 (2d Cir. 2012), (Court remanded where ALJ determined child had less than marked limitations in the domain of interacting and relating with others where the child's teachers indicated that the child "does not associate with his peers," "is extremely withdrawn," "does not have friends," and "is a loner," and child's treating source opined child had "extreme limitation in the domain of interacting and relating with others," "is basically a loner [and] is disinterested in other children," and "is still withdrawn in school and has no friends").

The ALJ's determination that S.M.T. had no limitation in the area of interacting and relating with others was supported by substantial evidence. Teacher evaluations indicated that S.M.T. had no limitation in the domain of interacting and relating to others. S.M.T.'s first grade teacher indicated that he had no problems in any area of interacting and relating with others. (T. 170-171.) The school nurse indicated that S.M.T. did not take his Albuterol inhaler on a regular basis during school hours (T. 173) and S.M.T.'s first grade teacher noted that she never witnesses an asthma attack at school (T. 225), thus indicating that S.M.T. did not miss out on class room time to receive treatment. S.M.T.'s second grade teacher noted he had an "unusual degree of absenteeism." (T. 220.)[3] However, despite his absenteeism, the second grade teacher indicated that S.M.T. had no problems in any area of interacting and relating to others, except in the area of "making and keeping friends" in which he had only a "slight problem." (T. 223.) A teacher noted "[S.M.T.] is a quiet boy. But does interact appropriately with his peers."

---

[3] The record indicated that for the school year 2010-2011 (first grade), S.M.T. was absent or tardy 39 times. (T. 177-178.) Of those absences, 12 were specifically noted as "doctor appointment," one was noted as "dentist," ten were noted as "absent – excused," and ten were noted as "absent – unexcused." (*Id.*) S.M.T.'s report card for the 4th marking period (4/11/12-6/22/12) indicated he was absent a total of seven times. (T. 238.)

(*Id.*)  Therefore, teacher evaluations supported the ALJ's determination that S.M.T. was not limited in this domain.

Medical evidence also supported the ALJ's determination.  Dr. Hartman performed a psychiatric evaluation of S.M.T. on July 15, 2011.  (T. 281.)  Dr. Hartman opined that S.M.T. had "mild" difficulty maintaining appropriate social behavior with peers and adults.  (T. 284.)  In addition, consultative examiner, Nader Wassef, M.D., indicated that S.M.T. "should not be exposed to extremes in temperature, second-hand smoke, perfumes, chemicals, or any type of respiratory irritants."  (T. 290.)  The limitations imposed by Dr. Wassef would not preclude S.M.T. from attending school or engaging in typical school activities.  Dr. Wassef opined that Plaintiff could participate in recreational activities and play sports appropriate for his age, as long as approved by his primary care provider.  (*Id.*)  The record does not contain specific restrictions from S.M.T.'s treating sources regarding classroom activities or gym class.

In sum, substantial evidence in the record, namely teacher evaluations, medical opinions from Drs. Hartman and Wassef, and testimony, supported the ALJ's conclusion that S.M.T. had no limitation in the domain of interacting and relating with others.

## C. The Domain of Health and Physical Well-Being

The domain of health and physical well-being considers the cumulative physical effects of physical and mental impairments and associated treatments or therapies on a child's health and functioning that were not considered in the evaluation of the child's ability to move about and manipulate objects. 20 C.F.R. § 416.926a(l).  "Unlike the other five domains of functional equivalence (which address a child's abilities), this domain does not address typical development and functioning.  Rather, the [h]ealth and physical

well-being domain addresses how such things as recurrent illness, the side effects of medication, and the need for ongoing treatment affect a child's body; that is, the child's health and sense of physical well-being." SSR 09-8P (S.S.A. Feb. 17, 2009), 2009 WL 396030, at *2.

The ALJ determined that S.M.T. had less than marked limitation in the domain of health and physical well-being. (T. 39.) In making her determination, the ALJ relied on teacher evaluations, the medical opinions of the consultative examiners, and the opinion of the non-examining state agency medical examiner. (*Id.*)

Plaintiff argues S.M.T. was chronically sick which required ongoing medical treatment that ultimately affected school attendance and his mental health; further, Plaintiff argues S.M.T. was "frequently ill" or had "frequent exacerbations" which equated to a marked limitations in this domain. (Dkt. No. 10 at 18-19, 20 [Pl.'s Mem. of Law].) Although Plaintiff asserts S.M.T. was "frequently ill" or had "frequent exacerbations" under the requirements of 20 C.F.R. 416.926a(e)(2)(iv)[4], Plaintiff provides no evidence from the record to support her contention.

To make a finding about functional equivalence, the ALJ was required to consider factors including how S.M.T. functions in school and the effects of his medications and other treatment. 20 C.F.R. § 416.926a(a)(1)-(3). The health and well-

---

[4]     For the sixth domain of functioning, "Health and physical well-being," [the ALJ] may also consider [the child] to have a "marked" limitation if [the child] [is] frequently ill because of [his] impairment(s) or have frequent exacerbations of [his] impairment(s) that result in significant, documented symptoms or signs. For purposes of this domain, "frequent means that you have episodes of illness or exacerbations that occur on an average of 3 times a year, or once every 4 months, each lasting 2 weeks or more. [The ALJ] may also find that [the child] [has] a "marked" limitation if [the child] [has] episodes that occur more often than 3 times in a year or once every 4 months but do not last for 2 weeks, or occur less often than an average of 3 times a year or once every 4 months but last longer than 2 weeks, if the overall effect (based on the length of the episode(s) or its frequency) is equivalent in severity. 20 C.F.R. § 416.926a(e)(2)(iv).

being domain differs from the other domains in that a child is considered to have a marked limitation if he is " 'frequently ill because of [his] impairment(s) or [has] frequent exacerbations of ... impairment(s) that result in significant, documented symptoms or signs.' " *Hairston ex rel. S.N. v. Comm'r of Soc. Sec.,* 52 F.Supp.3d 657, 674 (S.D.N.Y.2014) (quoting 20 C.F.R. § 416.926a(e)(2)(iv) (internal quotation marks omitted)).  The term "frequent" includes circumstances in which a plaintiff has "episodes of illnesses or exacerbations that occur on an average of [three] times a year, or once every [four] months, each lasting [two] weeks or more" or "episodes that occur more often than [three] times in a year or once every [four] months [that] do not last for [two] weeks...." *Hairston,* 52 F.Supp.3d at 674 (quoting 20 C.F.R. § 416.926a(e)(2)(iv) (internal quotation marks omitted)).  In *Hairston,* the court remanded where the ALJ did not sufficiently take into account testimony from a minor child's parents regarding the effect of her migraines on her attendance at school.  The district court pointed to evidence in the record suggesting that the child's migraines were "frequent and debilitating," including evidence from the testifying medical expert who noted that the migraines caused the child problems with going to school. *See Hairston,* 52 F.Supp.3d at 675.  Here, the ALJ thoroughly discussed S.M.T.'s absenteeism rate and substantial evidence supported the ALJ's determination that, even if his absenteeism was due to his impairments, it did not affect his ability to perform in school.  (T. 32, 39.)

To be sure, evidence in the record could support Plaintiff's contentions; however, substantial evidence supported the ALJ's determination that S.M.T. had less than marked limitation in this domain.  Under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or

to argue that the evidence in the record could support her position.  Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record.  *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Wojciechowski v. Colvin,* 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute its own judgment even if it might justifiably have reached a different result upon a *de novo* review).

Even if S.M.T. had a marked limitation due to his frequent absences in school, such a finding does not necessitate a determination of functional equivalence.  For functional equivalence, S.M.T. would need to have a "marked" limitation in two or more domains for his asthma to be equal to that in the Listed Impairments. *See* 20 C.F.R. § 416.926a(a).  Moreover, S.M.T's limitation in this regard may not properly be characterized as "extreme."  For a limitation in domain six to be considered "extreme," the Regulations require symptoms or signs "substantially in excess of the requirements for showing a 'marked' limitation" and also that the impairment "should meet or medically equal the requirements of a listing in most cases."  *Id.* at § 416.926a(e)(3)(iv). Additionally, the ALJ provided a discussion of S.M.T.'s school absences and his ultimate finding was supported by substantial evidence from the medical expert and the teacher's report.  *See Pena ex rel. D.S. v. Colvin*, No. 15-CV-1229, 2015 WL 5230211, at *9 (E.D.N.Y. Sept. 8, 2015), *See Abukhader ex rel. I.K.A. v. Comm'r of Soc. Sec.,* No. 11-CV-9453, 2013 WL 5882858, at *6-7 (S.D.N.Y. Oct. 28, 2013).

The medical evidence in the record supported the ALJ's determination. Although PA Ritz indicated S.M.T. had "severe persistent asthma" and he "fear[ed] for [S.M.T.'s] health" (T. 426), for the reasons stated herein, the ALJ properly reasoned that S.M.T.'s asthma did not require the type or number of treatments needed to satisfy the criteria of 20 C.F.R. § 416.926a(e)(2)(iv). (T. 31, 39.) The ALJ also took into consideration S.M.T.'s high absenteeism and concluded that the record did not support Plaintiff's contention that all of the absences were due to S.M.T.'s asthma. (T. 39.) Even assuming the missed school days were due to treatment or illness, his high level of absenteeism did not affect his school performance, including his ability to make and maintain friendships.

Medical evidence also supported the ALJ's determination in this domain. The ALJ relied on the medical opinions of Drs. Hartman and Wassef. (T. 39.) The ALJ concluded that the consultative examiners' opinions did not support greater limitations in this domain. (*Id.*) The ALJ also discussed the opinion of R. Blaber, M.D. who stated that S.M.T. would have marked limitation in this domain due to episodes of exacerbation. (T. 306.) However, the ALJ concluded that Dr. Blaber's opinion, dated August 4, 2011, was presented almost a year before all the evidence in the record was obtained. (T. 39.) The ALJ noted, again, S.M.T.'s hospitalization for asthma treatment in June 2011, and subsequent medical records did not show that S.M.T. received additional hospitalizations. (*Id.*) Therefore, based on teacher evaluations and the medical opinion evidence in the record, the ALJ's determination that S.M.T. had less than marked limitation in the domain of health and physical well-being was supported by substantial evidence. In addition, even had the ALJ determined that S.M.T. had a

marked limitation in this domain, it would not be enough to render S.M.T. disabled because he would not functionally equal a Listing.  20 C.F.R. § 416.926a.

### D.    The ALJ's Determination

Plaintiff argues the ALJ failed to consider the combined effects of S.M.T.'s impairments.  (Dkt. No. 10 at 23-24 [Pl.'s Mem. of Law].)  Plaintiff also appears to argue that the ALJ selectively picked evidence in the record which supported her decision and ignored contrary evidence.  (*Id.* at 23.)

With regard to combinations of impairments, at the second step of the sequential process the ALJ must make the determination of whether S.M.T. had a severe medically determinable impairment or combination of impairments.  The ALJ must then make a determination at step three whether S.M.T.'s impairment or combination of impairments "meets, medically equals, or functionally equals the listings."  20 C.F.R. § 416.924(a); *see also* 20 C.F.R. § 416.924(d).

Here, the ALJ properly considered the combined effects of S.M.T.'s impairments at steps two and three.  In her decision, the ALJ addressed all the medical evidence in the record, including S.M.T.'s hospitalizations, in making her determination.  (T. 31-39.) The ALJ also discussed S.M.T.'s school records, which included teacher evaluations, report cards, and notations of absenteeism.  (*Id.*)  The ALJ not only stated she took into consideration the combined effects of S.M.T.'s impairments at steps two and three, she specifically addressed them.  (T.31, 39.)   For example, the ALJ determined that the medical evidence in the record did not necessarily support a finding that S.M.T.'s panic attacks and/or anxiety were alone severe; however, the ALJ concluded that these mental impairments contributed to S.M.T.'s ADHD as a "severe combination of

medically determinable mental impairments." (T. 31.)   As a further example, the ALJ relied on the medical opinion of Dr. Wassef, who took into consideration S.M.T.'s asthma, ADHD, sleep apnea, allergies, acid reflux, sleep disorder, and history of surgeries into consideration in making his medical source statement.  (T. 33.) Therefore, the ALJ properly considered the combined effects of S.M.T.'s impairments because the ALJ thoroughly discussed the medical evidence in the record, including hospitalizations, and the ALJ specifically discussed the combined effects of S.M.T.'s impairments within her determination.

In addition, a thorough reading of the evidence in the record and the ALJ's decision, clearly indicated that the ALJ properly discussed all the evidence in the record and did not selectively rely on evidence which supported her conclusion.

In sum, substantial evidence supported the ALJ's determination that S.M.T.'s asthma did not meet or equal a Listing, the ALJ properly determined S.M.T. had no limitation in the domain of interacting and relating with others, the ALJ properly determined S.M.T. had less than marked limitation in the domain of health and physical well-being, and substantial evidence supported the ALJ's determination.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.

*Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:        May 6, 2016

William B. Mitchell Carter
U.S. Magistrate Judge